IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Turuk Saunders, #199803, | ) | Civil Action No.: 2:16-cv-1724-RMG-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Warden, Broad River Correctional Instit. | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 9; *see also* Dkt. No. 8.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner, acting *pro se*, filed the instant action on May 27, 2016. (Dkt. No. 1.) On August 1, 2016, Respondent filed a Motion for Summary Judgment. (Dkt. No. 8; Dkt. No. 9.) On November 10, 2016, Petitioner filed a Response in Opposition to the Motion for Summary Judgment, to which Respondent filed a Reply. (Dkt. No. 20; Dkt. No. 21.)

## PROCEDURAL HISTORY

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC"). In March of 2007, the Beaufort County Grand Jury indicted Petitioner for: 1) possession with intent to distribute marijuana; 2) possession with intent to distribute cocaine; 3) possession with intent to distribute ecstacy; 4) trafficking in crack cocaine 10-28 grams; and 5) use of a firearm during commission of a violent crime. (Dkt. 8-3 at 595-603.)

The Petitioner was represented at trial by Corey Fleming, Esq. (Dkt. No. 8-1 at 6.) The Petitioner proceeded to a jury trial before the Honorable J. Ernest Kinard, Jr. on May 24, 2010. (*Id.* at 5.) The jury convicted the Petitioner on the four drug charges, and acquitted the Petitioner on the gun charge. (Dkt. No. 8-2 at 92-93.) Judge Kinard sentenced the Petitioner to two

concurrent twenty (20) year sentences on the possession with intent to distribute marijuana and ecstasy, a concurrent twenty-seven (27) year sentence on the possession with intent to distribute crack cocaine and a concurrent twenty-seven (27) year sentence and $50,000 fine on the trafficking charge (Dkt. No. 8-2 at 341-42.)

The Petitioner appealed and was represented by Nicole Nicolette Mace, Esquire. (*See* Dkt. No. 8-4.) On December 20, 2011, the Petitioner raised the following issues:

> 1) Whether the trial court erred in denying the appellant's motion for directed verdict when the appellant was merely present and there was no evidence he possessed the drugs found inside the trailer;
>
> 2) Whether the trial court violated the appellant's due process rights by failing to obtain the name of a juror who knew a witness who testified at his trial;
>
> 3) Whether the trial court abused its discretion by allowing evidence to go back to the jury that was never properly admitted in the presence of the jury.

(Dkt. No. 8-4 at 2.)

In an unpublished, per curiam, opinion filed on July 25, 2012, the South Carolina Court of Appeals affirmed the Petitioner's convictions and sentences. (Dkt. No. 8-5.) The matter was remitted to the lower court on August 10, 2012. (Dkt. No. 8-6.)

On November 30, 2012, Petitioner filed an application for post-conviction relief ("PCR"). (Dkt. No. 8-2 at 108-116.) Petitioner stated that his trial counsel was ineffective in:

1) failing to object to inadmissible hearsay and character evidence testimony regarding the applicant;

2) failing to object to the court allowing evidence to go back to the jury that was never properly admitted in the presence of the jury;

3) failing to properly inquire into the facts of a juror who knew a witness who testified;

4) failing to object to the court's testimony as to the Applicant's conduct at the crime scene where such testimony was never verified by any witness "nor the evidence as to the time of arrival of the Applicant at the crime scene";

5) failing to object to the prosecutor's continued reference to him as "Big T" after the court's ruling and the prosecutor agreeing that such would not happen; and

6) failing to know the law of the case by failing to ensure that all the issues raised were preserved for proper review.

(Dkt. No. 8-2 at 111.) The State filed a Return on February 25, 2013. (Dkt. No. 8-2 at 147.)

On August 26, 2013, Scott W. Lee, Esquire, filed an amended application for post-conviction relief on Petitioner's behalf, in which he cited these additional allegations of ineffective assistance of trial counsel:

1. Trial counsel failed to properly challenge the issue of probable cause for issuance of the search warrant which led to the State's discovery of the drugs for which Applicant was charged;

2. Trial counsel failed to properly argue against the admissibility of testimony of Witness Reeves with regard to State v. Lyle and SCRE Rule 404(b), or under any other theory;

3. Trial counsel failed to argue and obtain a ruling on the admissibility of Defendant's prior record for the purposes of impeachment;

4. Trial counsel failed to fully discuss the benefits and pitfalls of Applicant testifying because he did not obtain a ruling on the admissibility of Applicant's prior convictions, thereby preventing Applicant from making a fully informed decision about whether or not he will testify;

5. Trial counsel failed to call exculpatory witnesses who would have refuted testimony offered by the State, despite their ability, availability, and willingness to testify;

6. Trial counsel failed to properly renew and preserve the issue of the admissibility of Witness Reeves' testimony, thereby procedurally barring and preventing same from being considered on appeal; and

7. Trial counsel failed to request a jury instruction from the Court according to the limited purpose of admissibility of testimony and admitted pursuant to State v. Lyle.

(Dkt. No. 8-2 at 144-146.)

On August 27, 2013, an evidentiary hearing was held before the Honorable Deadra L. Jefferson. (Dkt. No. 8-2 at 153.) The Petitioner was present and represented by Scott W. Lee, Esquire. (Dkt. No. 8-2 at 154.) In an order filed March 10, 2014, Judge Jefferson denied the application for post-conviction relief and dismissed the petition. (Dkt. No. 8-3 at 62-88.) The Petitioner filed a Motion to Alter or Amend on April 8, 2014. (Dkt. No. 8-3 at 89-91.) On May 28, 2014, Judge Jefferson denied the Petitioner's motion. (Dkt. No. 8-3 at 92-98.)

Petitioner appealed, and on January 21, 2015, through Chief Appellate Defender Robert M. Dudek, filed a Petition for Writ of Certiorari. (Dkt. No. 8-7, Petition for Writ of Certiorari.) Therein, the Petitioner raised the following issue:

> Did the PCR Court erroneously rule that defense counsel had a valid "strategy" not to challenge the sufficiency of the search warrant where counsel misunderstood the concept of "standing" to challenge the warrant, and counsel erroneously decided that if he was going to assert "mere presence" as a defense that he had to accept the judge's erroneous ruling that he could not challenge the search warrant pre-trial?

(Dkt. No. 8-7 at 3.) On June 8, 2015, Assistant Attorney General Justin Hunter filed a return to the petition. (Dkt. No. 8-8, Return to Petition for Writ of Certiorari.)

In an order dated October 8, 2016, the Supreme Court of South Carolina denied the petition or a writ of certiorari. (Dkt. No. 8-9.) The Petitioner filed a *pro se* Petition for Rehearing, which was rejected by the South Carolina Supreme Court in an order dated December 9, 2015. (Dkt. No. 8-10.) The matter was remitted to the lower court on October 26, 2015. (Dkt. No. 8-11.) The remittitur was filed in the Beaufort County Fourteenth Judicial Circuit Public Index on October 28, 2015. (Dkt. No. 8-12.)

In his *pro se* Petition for Writ of Habeas Corpus, Petitioner makes the following claims of error:

**Ground One**: Trial Court erred in denying motion for directed verdict where Appellant was merely present and there was no evidence he possessed the drugs found inside the trailer.
Supporting Facts: SEE MEMORANDUM OF LAW

**Ground Two**: Trial court violated Appellant's Due Process Rights by failing to obtain the name of a juror who knew a witness who testified at Appellant's trial.
Supporting Facts: SEE MEMORANDUM OF LAW

**Ground Three**: Trial court abused its discretion by allowing evidence to go back to the jury that was never properly admitted in their presence.
Supporting Facts: SEE MEMORANDUM OF LAW

**Ground Four**: Ineffective Assistance of Counsel: Failed to object to inadmissible hearsay and character testimony regarding the defendant.
Supporting Facts: SEE MEMORANDUM OF LAW

(Dkt. No. 1 at 5-10.) Petitioner also continued his grounds in an attachment to the petition:

**Ground Five**: Ineffective assistance of counsel for failing to object to the court allowing evidence to go back to the jury that was never properly admitted during trial.

**Ground Six**: Ineffective assistance of counsel for failing to properly inquire into the facts of a juror who knew State's witness Mr. Jenkins.

**Ground Seven**: Ineffective assistance of counsel for failing to object to the court's testimony as to the applicant's conduct at the crime scene where such testimony was never verified by any witnesses nor the evidence to the time of Arrival of the Applicant at the crime scene.

**Ground 8**: Ineffective assistance of counsel for failing to object to the prosecutor's continued reference to him as "Big T" after court's ruling and prosecutor agreeing that such want happen.

**Ground 9**: Ineffective assistance of appellate counsel for failing to know the Law of there (sic) case by ensuring that all issues Raised were preserved for proper review.

**Ground 10**: Ineffective assistance of counsel for failing to properly argue, make a proper record of, and preserve the issue of Probable Cause for issuance of the Search Warrant.

**Ground 11**: Ineffective assistance of counsel for failing to properly argue, make a proper record of, and preserve the issue of the admissibility of Witness Reeves testimony under State v. Lyle SCRE Rule 404 (b) or any other theory.

**Ground 12**: Ineffective assistance of counsel for failing to properly argue, make proper record of, and preserve the issue of admissibility of Applicant's prior record for impeachment purposes;

**Ground 13**: Ineffective assistance of counsel for failing to fully discuss the potential benefits and pitfalls of applicant testifying because he did not obtain a ruling on admissibility of prior convictions, preventing applicant for make (sic) a fully informed decision about testifying or not;

**Ground 14**: Ineffective assistance of counsel for failing to properly argue, make a proper record of, and preserve the issue of admissibility of Witness Reeves testimony;

**Ground 15**: Ineffective assistance of counsel for failing to request a jury instruction regarding the limited purpose of admissibility of testimony admitted under State v. Lyle;

**Ground 16**: The PCR court erred in finding that trial counsel's failure to challenge the search warrant was a valid trial strategy;

**Ground 17**: Ineffective assistance of counsel for failing to request Judge Kinard's Recusal from the case;

**Ground 18**: The PCR court failed to address all issues Raised by Applicant's original *pro se* PCR application;

**Ground 19**: The PCR court erred in failing to address the cumulative effect of the above errors committed by trial counsel;

**Ground 20**: The PCR court erred in finding that trial counsel's performance was not deficient, and that such performance did not result in unfair prejudice to the applicant during the trial and for appellate purposes;

**Ground 21**: The PCR court erroneously ruled that defense counsel had a valid "Strategy" not to challenge the sufficiency of the search warrant where counsel misunderstood the concept of "standing" to challenge the warrant, and counsel erroneously decided that if he was going to assert "mere presence" as a defense, that he had to accept the judge's
erroneous ruling he could not challenge the search warrant Pre-trial.

6

(Dkt. No. 1-2.)

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

### Habeas Standard of Review

Because the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).[1]

**Ineffective Assistance of Counsel**

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir.

---

[1]Respondent admits, and the undersigned agrees, that the Petitioner has exhausted his state remedies and the Petition is timely filed under AEDPA. (Dkt. No. 8 at 9-11.)

2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985).

In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id*. While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

## FACTS

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 9; *see also* Dkt. No. 8.) Before turning to the merits of the individual grounds for relief, the undersigned will briefly review the facts of this case.

The case revolves around the execution of a search warrant on a trailer in Beaufort County, South Carolina on February 23, 2007. The Petitioner and others were found there along with drugs and a gun. The allegations were that the Petitioner was running a drug operation out of a trailer he rented in Beaufort County, South Carolina. (Dkt. No. 8-1 at 69-70.) The landlord (Bobby Jenkins) testified that the Petitioner was the sole renter from August of 2004 until the time of the Petitioner's arrest in February of 2007. (Dkt. No. 8-1 at 131-132.) Rent was paid timely in cash by the Petitioner or his girlfriend and the receipts for all monthly payments were all made out to the Petitioner. (Dkt. No. 8-1 at 131-136.) Mr. Jenkins testified that the trailer was

rented on a month to month basis and he asked for thirty days' notice if the Petitioner was to move, and the Petitioner never gave notice. (*Id.* at 128.) If Mr. Jenkins needed to repair something on the property, he would meet with the Petitioner at the site. (*Id.* at 129.)[2]

Law enforcement was conducting surveillance on the trailer for suspected drug activity on February 23, 2007. (Dkt. No. 8-1 at 118, 122-123.) Witness William Reeves testified that the evening before the raid, February 22, 2007, he and three others drove to the trailer to buy cocaine from the Petitioner, knows to Reeves as "Big T". (Dkt. No. 8-2 at 9-12.)[3] Reeves and Benjamin entered the trailer while the women stayed in the car. (Dkt. No. 8-2 at 11.) Reeves and Benjamin walked to the back of the trailer, entered, and encountered Petitioner and unspecified others. (Dkt. No. 8-2 at 11-12.) Only Benjamin and the Petitioner went to the back of the trailer and returned about fifteen (15) minutes later. (*Id.*) Reeves stayed in the kitchen area while the others were playing video games in another room. (*Id.*) Reeves remembers commenting on a police scanner he saw in the kitchen of the trailer. (Dkt. No. 8-2 at 11-12.) Benjamin returned with a "quarter" of cocaine. (*Id* at 12.) Reeves and Benjamin were stopped minutes later by the police; the cocaine was hidden in Benjamin's body and Reeves was arrested for marijuana he had in his possession. (Dkt. No. 8-2 at 13-14.)[4]

---

[2]The Petitioner disputes that he was the tenant at the time of the raid. Petitioner asserted at trial that he had moved in with his girlfriend eight months prior to the execution of the search warrant and was just visiting his brother, Akeem Saunders. The Petitioner had let his brother "sort of continue the lease." (Dkt. No. 8-1 at 73-74.)

[3]Reeves was with his brother-in-law (Andre Benjamin), his girlfriend and sister. (*Id.* at 9.)

[4]Whether Reeves bought the marijuana from Petitioner was a hotly contested subject of cross-examination. Reeves gave conflicting information on the issue. (Dkt. No. 8-2 at 16-25.)

The drug force commander (J. Woodward) for the Beaufort County Sheriff's Department conducted surveillance on the trailer for most of the day before the execution of the search warrant. (Dkt. No. 8-1 at 117-118, 122.) Woodward saw only one car arrive just prior to the SWAT team's arrival for execution of the warrant. He did not see any other car while he conducted surveillance for most of the day; he did not see the Petitioner arrive or leave. (Dkt. No. 8-1 at 122-128.)

As the SWAT team approached the back door to the trailer, they saw a suspect look out of a rear window at them. The team identified themselves as the sheriff's office (Dkt. No. 8-1 at 81-82.) When the SWAT team entered the trailer from the back, law enforcement in front of the trailer observed Petitioner exit the front door of the trailer, where he dropped a cellophane bag of marijuana. (Dkt. No. 8-1 at 92-93, 145-146.) The search of the trailer revealed drugs (in the bathroom, living room and bedrooms), drug paraphernalia, including plastic bags, a police radio scanner, razor blades (in the kitchen), a digital pocket scale (in the kitchen) and a shotgun (in the master bedroom.) (Dkt. No. 8-1 at 96-97, 147-150, 152- 178.)

Having reviewed the factual background of the case, the undersigned now turns to the Petitioner's individual grounds for relief. For the reasons set forth herein, the undersigned recommends granting the Motion for Summary Judgment. (Dkt. No. 9.)

## PCR EVIDENTIARY HEARING

Cory Fleming, Esq. testified at the PCR hearing that he was retained to represent the Petitioner at trial. He filed the Notice of Appeal for the Petitioner and remained on the case until he received the trial transcript. (Dkt. No. 8-2 at 162.) Counsel testified that he had practiced law for nineteen (19) to twenty (20) years and practiced criminal law regularly. (Dkt. No. 8-2 at 202.)

Counsel testified that the case was a classic drug investigation involving the drug task force and complaints about drug activity at the trailer. He stated that the task force stopped the car (Reeves and Benjamin occupied) and, based on the information that they gathered from the occupants of that car, they obtained a search warrant for the trailer and found drugs. (Dkt. No. 8-2 at 162-163).

Counsel stated that because no drugs were found on the Petitioner (other than the bag of marijuana he threw down on his way out the door), his strategy at trial was to argue a mere presence defense: that the Petitioner was not linked to the drugs found in the trailer, but was only present during the raid. Counsel said that there were many people at the trailer and it was clear that the Petitioner did not live there. Counsel's defense hinged on the appearance of one witness (Reeves) who could identify the Petitioner as being the "person who was dealing the dope." [5]

Counsel was aware that the probable cause for the search warrant was based on Reeves' claim that he bought drugs from the Petitioner the night before the raid.[6] Counsel testified that he originally intended to challenge the search warrant, but ultimately decided against it. (Dkt. No. 8-2 at 167.) Before challenging the search warrant, he had a discussion with the trial court. He explained that their position was that Petitioner did not have dominion and control over the trailer, that he was just a visitor himself. Therefore, he did not believe that the Petitioner had any

---

[5] Counsel moved to suppress Reeves' testimony under Rule 404(b), SCRE, which was denied by the trial court. (Dkt. No. 8-1 at 240, Dkt. No. 8-2 at 1-4.) Although counsel did not cite *State v. Lyle* specifically, it is clear that the trial court was performing a *Lyle*, SCRE 404(b) analysis. (*Id*. and Dkt. No. 8-2 at 198-199.) At the beginning of the trial, counsel had been told Reeves had not been located, and he might not appear to testify. (Dkt. No. 8-1 at 40-41.)

[6] The search warrant states that: Reeves and Benjamin had gone to the trailer to "purchase drugs"; Reeves bought marijuana from the Petitioner; and Benjamin may have bought the crack found in the car from the Petitioner, but that he did not see the transaction. (Dkt. No. 8-3 at 121-123.)

specific standing to object to the search, but he thought Petitioner should be entitled to challenge the search warrant without admitting standing. (Dkt. No. 8-2 at 168-169 and Dkt. No. 8-1 at 36-39.) The trial court warned that he would not let the Petitioner take factually inconsistent positions, one for the suppression hearing and one for trial purposes. Counsel made a strategic decision, because he did not want to jeopardize his entire trial strategy by challenging the search warrant. (*Id.*)

Counsel also thought that the challenge to the search warrant was not "particularly strong" and that while the veracity of the State's witness had its problems, that based on the totality and ongoing nature of the investigation, he thought that the court would find probable cause. (Dkt. No. 8-2 at 218-219.) Counsel explained that he was of the strong opinion that Reeves would not show up to testify and he did not think the State was going to be able to link the Petitioner to the drugs in the trailer. He presented an equally possible scenario: that the Petitioner was simply buying some marijuana. (Dkt. No. 8-2 at 216.)

Counsel believed that the defense case was in very good shape until Reeves' testimony. (Dkt. No. 8-2 at 189.) Although he did not expect Reeves to appear, he had reviewed Reeves' statement and the search warrant affidavit and was able to cross-examine Reeves about inconsistencies. (Dkt. No. 8-1 at 40-41; Dkt. No. 8-2 at 176-179.)[7] Counsel testified he could have pursued a *Franks v. Delaware* hearing but chose not to request one for the same reason he chose not to challenge the search warrant. (Dkt. No. 8-2 at 186-187 and 221-222.)

---

[7]The undersigned notes that counsel did vigorously and effectively cross-examine Reeves. (Dkt. No. 8-2 at  15-26.)

Counsel testified that, although he did not file a written motion to determine the admissibility of the Petitioner's prior convictions, he did raise the issue with the court during a "housekeeping" break in the trial (Dkt. No. 8-1 at 44; Dkt. No. 8-2 at 199.) There was no definitive ruling on the admissibility of the prior convictions. Counsel believed it was premature, as the Petitioner had not decided whether to testify or not. Counsel testified that he told the Petitioner that he did not think his prior drug convictions would be admissible. Counsel does not believe the prior convictions were the reason the Petitioner decided not to testify. (Dkt. No. 8-2 at 199-202.) Counsel stated that he and the Petitioner discussed his right to testify and counsel would have requested a ruling on the prior convictions had the Petitioner decided to testify. (Dkt. No. 8-2 at 199-201.) Counsel testified that he advised the Petitioner of his right to testify and that the ultimate decision not to testify was the Petitioner's. (Dkt. No. 8-2 at 224-225.) "If the reason that [Petitioner] wasn't testifying was based on his prior record, then I would think [a hearing] would have been necessary." (*Id*.)

Counsel said that he discussed the decision not to call any defense witnesses with the Petitioner and that Petitioner agreed. (Dkt. No. 8-2 at 225-226.) Counsel had considered calling the co-defendants as witnesses, all of whom had attorneys, but after investigation, determined that their testimony would not be helpful or they did not want to testify. (Dkt. No. 8-2 at 206.) In counsel's judgment, he had good reasons not to put on a defense, although he had witnesses present: he been able to successfully challenge the evidence without defense witnesses; he did not want any defense witnesses with credibility problems who "might mess it up." (Dkt. No. 8-2 at 206-207); he was able to reserve the last argument; he thinks putting up a defense without the defendant testifying is a bad signal to the jury. (Dkt. No. 8-2 at 207-208, 216.)

14

Counsel testified that he moved for and received *Brady* and discovery materials and reviewed all evidence with his client. (Dkt. No. 8-2 at 212-214.) Counsel met with the Petitioner many times prior to trial: they discussed the elements of his charges, Petitioner's version of the facts, possible defenses and potential witnesses. (*Id.*) Counsel spoke to every witness who testified, even Reeves who was found by the State during the trial. (*Id.*) Witness Jenkins provided counsel with the rental receipt book right before Jenkins' testimony, despite having interviewed Jenkins before; but that in his judgment, that testimony was not "particularly damaging." (Dkt. No. 8-2 at 214, 219.)

Counsel testified that he did not think there was any basis to recuse the trial judge, even though he took guilty pleas from the co-defendants. (Dkt. No. 8-2 at 226.) Counsel made the motion to have the State not refer to the Petitioner as "Big T". He thought the State's use of the name in closing argument "problematic" but not "objectionable" because it was a fair statement by the prosecutor of the Petitioner's identity. (Dkt. No. 8-2 at 227.)[8]

The Petitioner testified that he was "unhappy about" a juror, never identified, who indicated at voir dire that he knew witness Jenkins. The Petitioner testified that he did not have any evidence that this person was seated on the jury because the person was never identified. (Dkt. No. 8-2 at 236.)[9] He said that this issue was appealed, but it was not preserved for review. (Dkt. No. 8-2 at 236-237.) Petitioner testified that another issue was not preserved for review:

---

[8]The trial court's ruling on this issue was not to mention the nickname "Big T" until the State laid a foundation for it, which they did through the testimony of Reeves. (Dkt. No. 8-1 at 41-43; Dkt. No. 8-2 at 10-11.)

[9]The undersigned notes that the Petitioner inconsistently states in his reply that he has always known the identity of the juror; that she was the jury foreperson. (Dkt. No. 20 at 12.)

15

that Counsel failed to preserve the issue of the drug reports, which were not admitted into evidence before the jury, but were allowed to go back to the jury room. (Dkt. No. 8-2 at 237-238.) Petitioner testified that counsel failed to investigate additional witnesses who could have testified that he did not live at the trailer and who could have discredited witness Reeves' testimony. (Dkt. No. 8-2 at 240.) Petitioner claimed that the trial judge was biased because he possessed knowledge and history of the case. (Dkt. No. 8-2 at 240-241.) Petitioner claimed that counsel did not advise him of his right to testify and that counsel made the decision for him not to testify. (Dkt. No. 8-2 at 243.) Petitioner then admitted that the trial court advised him of his right to testify and advised him that it was his decision to make. (Dkt. No. 8-1 at 243.)

Three other witnesses testified at the PCR hearing. Tyece Brown testified that she was the Petitioner's girlfriend at the time of the trial, and that they had lived together since late 2009, early 2010. (Dkt. No. 8-2 at 246.) (The arrest of the Petitioner for this incident was in 2007.) She was present and sequestered at the trial, but that she was not called as a witness. (Dkt. No. 8-2 at 247-248.) She could have testified that the Petitioner was living with her since 2009, 2010 and she had a copy of the lease that was in her and the Petitioner's names. (*Id.*)

Akeem Saunders, the Petitioner's brother and co-defendant, testified that he was present during the raid, was charged with drug offenses and pled guilty to the charges before the Petitioner's trial. (Dkt. No. 8-2 at 250-251.) Contrary to Reeves' testimony, Akeem Saunders testified that he was present when Reeves came to the trailer, but that his brother, the Petitioner, was not there. (Dkt. No. 8-2 at 251.) Akeem testified that he lived in the trailer at the time of the search, not his brother, and that he had been there for three (3) to four (4) months, and that the Petitioner was just visiting at the time of the search. (Dkt. No. 8-2 at 252.) Akeem testified that

16

he does not know why he was not called to testify to these facts at the trial; he was in jail at the time; he wanted to testify and would even risk losing a favorable plea offer from the State by testifying on his brother's behalf. (Dkt. No. 8-2 at 252-253, 255.)

Andre Benjamin testified that he was the brother-in-law of witness Reeves. He admitted going to the trailer with his wife, Reeves and Reeves' girlfriend. He denied going to the trailer for drugs, but states he was going to talk to Akeem Saunders about some ladies they had been seeing. (Dkt. No. 8-2 at 258.) He testified that Reeves did not go in there with him, because, as his wife's brother, there was no way he would discuss other ladies in front of Reeves. He said that Reeves called him back to the car and asked him to buy some marijuana. Benjamin stated that he went in the trailer and saw Akeem Saunders and another man, but that he did not see the Petitioner. Benjamin had shown up at the trial to testify to these facts. (Dkt. No. 8-2 at 260.) On cross-examination, Benjamin admitted that he signed an affidavit in October of 2012 (which he gave to Petitioner's PCR counsel) stating that Reeves **did** go inside the trailer with him. Benjamin asserted that his testimony was correct; the affidavit was not correct. (Dkt. No. 8-2 at 263-264.)

### Procedural Default

The Respondent argues that Grounds Four, Five, Seven, Eight, Eleven, Twelve, Thirteen, Fourteen, Fifteen and Seventeen are procedurally defaulted and/or barred. These grounds all allege ineffective assistance of counsel for issues that were not raised in the PCR appeal. Generally, "federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show

17

cause for the default and demonstrate actual prejudice as a result of the alleged violation of

federal law, or prove that failure to consider the claims will result in a fundamental miscarriage

of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) (quoting *McCarver v. Lee*,

221 F.3d 583, 588 (4th Cir. 2000)).

> As the Fourth Circuit stated in *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004),
>
> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id*. at 845, 847, 119 S.Ct. 1728. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

 *Longworth*, 377 F.3d at 448.

Procedural default may be excused if the Petitioner "can demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*,

501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In the

alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a

miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998);

*see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or abandonment by counsel. *Maples v.

Thomas*, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his

attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond

his control, necessary to lift the state procedural bar to his federal petition" (internal quotation

marks and citations omitted)).

Here, the Petitioner raised only one claim on appeal of the PCR court's denial of his PCR

application:

> Did the PCR Court erroneously rule that defense counsel had a valid "strategy"
>
>  not to challenge the sufficiency of the search warrant where counsel
> misunderstood the concept of "standing" to challenge the warrant, and counsel
> erroneously decided that if he was going to assert "mere presence" as a defense
> that he had to accept the judge's erroneous ruling that he could not challenge the
> search warrant pre-trial?

 (Dkt. No. 8-7 at 3.) Because the Petitioner did not raise his other claims of ineffective assistance

of counsel to the appellate courts, those claims are defaulted. *See Longworth v. Ozmint*, 377 F.3d

437, 447-48 (4th Cir. 2004) (concluding that certain grounds are "procedurally defaulted as a

result of [the petitioner's] failure to raise them in his petition for certiorari to the South Carolina

Supreme Court for review of the State PCR Court's decision"); *see also Ward v. McLeod*, No.

3:01-0012-25BC, 2002 WL 31996018, at *4 (D.S.C. Apr. 18, 2002) ("When the petition for

habeas relief is filed in the federal court, a petitioner may present only those issues which were

presented to the South Carolina Supreme Court through direct appeal or through an appeal from

the denial of the PCR application, whether or not the Supreme Court actually reached the merits

of the claim.").

In the Petitioner's reply, he cites a series of cases to contest the procedural default of these

claims. In the Respondent's Reply, it adequately addressed why those cases were misapplied in

this case. The Petitioner has not shown any extraordinary or compelling cause for the procedural

default. As discussed below, the Petitioner cannot show any actual prejudice from any violation of any federal law. Even to the extent the Petitioner argues that his PCR appellate counsel was ineffective in failing to raise and preserve those grounds (Ground 9), such an allegation is insufficient to overcome the default. The Petitioner cannot show that the underlying issues are substantial or have merit, as discussed below. *Martinez v. Ryan*, 132 S.Ct. 1309, 1318 (2012). The undersigned finds Grounds Four, Five, Seven, Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Fifteen and Seventeen are procedurally defaulted and/or barred.

The Respondent also challenge Grounds Eighteen and Nineteen as not cognizable as they do not allege any violation of federal law. The Supreme Court has held that the habeas statute "unambiguously provides that a federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (internal quotations and citations omitted.) Grounds Eighteen and Nineteen generally allege that the PCR court failed to consider issues raised in the Petitioner's PCR application but do not allege any violation of federal law. South Carolina law governs findings of fact and conclusions of law. S.C. Code of Law § 17-27-80. Such claims are not cognizable on federal habeas review. 28 U.S.C. § 2254(d); *see Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding claims of error in state PCR proceedings are not cognizable on federal habeas review.)  The undersigned recommends granting summary judgment on Grounds Eighteen and Nineteen.

In the event that the district judge assigned to this case concludes that these grounds (Grounds Four, Five, Seven, Eight, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Seventeen, Eighteen and Nineteen) for relief are not procedurally defaulted, the undersigned recommends

granting summary judgment to the Respondent on the merits, as discussed below. To the extent

the Petitioner seeks habeas relief on allegations of errors in the PCR court, he is not entitled to

relief herein. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988) (holding "claims of error

occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus

relief").

**<u>Ground One</u>**

In Ground One, the Petitioner alleges the trial court erred in denying motion for directed

verdict when he was "merely present and there was no evidence he possessed the *drugs found inside*

*the trailer." (Dkt. No.1 at 5.)  The Respondent construes (and the* undersigned agrees) the

Petitioner's claim to argue that his due process rights were violated by the trial court's denial of his

motion for a directed verdict. *See Erickson v. Parous*, 551 U.S. 89, 94 (2007) (federal district court is

charged with liberally construing a pleading filed by a *pro se* litigant to allow the development of a

potentially meritorious case). Petitioner must show, however, the court's decision is "contrary to ...

[clearly] established Federal law as determined by the Supreme Court of the United States," or

"involved an unreasonable application of ... clearly established Federal law, as determined by the

Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000) (quoting §

2254(d)(1)).

Allegations of insufficiency of evidence to convict made in a federal habeas corpus action

are considered to be claims of denial of due process. *See Pope v. Netherland*, 113 F.3d 1364,

1368 (4th Cir.), *cert. denied*, 521 U.S. 1410 (1997) ("Any challenge to the sufficiency of the

evidence to convict in a state prosecution is necessarily a due process challenge to the

conviction") (internal citations omitted). Although this claim is cognizable in a habeas action in

this court, the court's review in this area is 'sharply limited.' *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). The *Wilson* court determined that district courts are required to give significant deference to the state court's ruling on motions for directed verdict and similar challenges to the sufficiency of evidence to convict because [f]ederal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review. 155 F.3d at 405. This deference requires this court to consider that a defendant is entitled to relief only if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' *Id.* at 406 (quoting *Jackson v. Virginia*, 443 U.S. 307, 324, (1979)); *Williams v. Warden*, *Lieber Corr. Inst*., No. CV-5:15-02106-MGL-KDW, 2016 WL 1567333, at *12 (D.S.C. Mar. 10, 2016), *report and recommendation adopted*, No. CV-5:15-02106-MGL-KDW, 2016 WL 1557735 (D.S.C. Apr. 18, 2016), *appeal dismissed*, No. 16-6637, 2016 WL 4440387 (4th Cir. Aug. 13, 2016).

The Petitioner claims that there is no evidence that he possessed the drugs in the trailer. Possession of a controlled substance can be either actual or constructive. Actual possession occurs when the drugs are found to be in the physical possession of the defendant; constructive possession occurs when the defendant has dominion or control, or the right to exercise dominion and control, over either the drugs or the premises where the drugs are found. *State v. Stanley*, 365 S.C. 24, 42-43, 615 S.E.2d 455, 464 (Ct. App. 2005); *State v. Ballenger*, 322 S.C. 196, 199, 470 S.E.2d 851,854 (1996). In this case, the Court of Appeals affirmed Petitioner's conviction on this ground, citing relevant case law on constructive possession. (Dkt. No. 8-5 at 1-3.)

After reviewing all the evidence presented at trial, the undersigned finds that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. The State presented evidence that, if believed, established that the Petitioner had control over the location where the drugs were found. The landlord, witness Jenkins, testified that he leased the trailer to the Petitioner and Petitioner had never given him notice. All receipts for rent payments were paid by the Petitioner or his girlfriend. The only times Jenkins went to the trailer were to meet the Petitioner there for repairs. (Dkt. No. 8-2 at 10-12, 27.) In addition, witness Reeves testified that he and his brother-in-law went to that trailer the night before the execution of the search warrant to buy drugs from the Petitioner. Reeves had known the Petitioner for years, and identified him at trial.

A rational jury could infer from this evidence that the Petitioner had dominion and control over the trailer, and therefore, the drugs found throughout the trailer. In ruling on Petitioner's motion for a directed verdict, the trial court said:

> Well, we were in a little trouble until the last witness testified. The last witness, as you in your heart of hearts know, if believed by the jury in the light most favorable, which version they believe, shows not only that he owned the house, had control of the house, was dealing out of the house. I can't grant your DV on any charges, since the drugs were in the house, so forth and so forth.

(Dkt. No. 8-2 at 30.)

The PCR court elaborated on the issue of dominion and control of premises generally:

> You have, in the State's theory, a rash of these prop houses where people don't live there, but they have dominion and control of it, and they do that deliberately to sell drugs and then later argue I didn't have dominion and control, therefore it's not my house. ... In other words, that there's one person that lived in the house. Whether they were there or not, they really ran this enterprise and they had control of it. And it really doesn't matter whether they were the ones that were living

23

there that day or absent that day, they were the ones basically in control of running
it and – but they live someplace else. But it's all just a sham. They deliberately
don't particularly live in this residence. And rarely do you find any true evidence
that the person resides there.

(Dkt. No. 8-2 at 24-25.) A rational jury could infer from the facts of this case, that the Petitioner
was in control of this trailer, even though he may not have lived in it. The Petitioner was the only
official tenant, paid the rent for it and, if Reeves' testimony was believed, he sold drugs there the
previous evening, Giving the required deference required to the state courts, and after review of
the evidence, the undersigned finds that a rational trier of fact could have found the Petitioner
guilty beyond a reasonable doubt. The undersigned recommends that Ground One of the Petition
be dismissed.

**Grounds Two and Six**

In Ground Two, the Petitioner asserts that the trial court violated his Due Process rights
by failing to get the name of a juror who knew witness Jenkins. Ground Six claims ineffective
assistance of trial counsel for same. This issue arose during the trial court's general voir dire of
the jurors, when the trial judge asked the jurors to stand if anyone recognized the name of
potential witnesses for trial. (Dkt. No. 8-1 at 20.) The juror, who was not identified, stood and
told the court he knew Robert Jenkins (the landlord). The trial court asked the juror how he knew
the witness, and the juror responded, "He was my classmate." (*Id*.) The court then asked the juror
if he could be fair and impartial, and the juror responded, "Yes." (*Id*.) The South Carolina Court
of Appeals found this issue unpreserved because counsel did not object to the trial court's failure
to inquire further about the juror's potential bias. (Dkt. No. 8-5 at 1-3.)

Trial courts have broad discretion in conducting voir dire in areas of inquiry that might
tend to show jury bias. *Mu'Min v. Virginia,* 500 U.S. 415, 427 (1991). "Jury selection, we have

repeatedly emphasized, is 'particularly within the province of the trial judge.'" *Skilling v. U.S.*, 561 U.S. 358, 386 (2000) (citations omitted). A trial court's findings of juror impartiality may be overturned only for manifest error." *Id.* at 428 (internal citations omitted).  In this case, it is not clear even if this juror was seated on the jury; that is one of the problems caused by the lack of identification of the juror. [10]  But the trial court **did** ask the juror if s/he could be fair and impartial, and the juror responded that s/he could be fair and impartial. (Dkt. No. 8-1 at 20.)

This witness' credibility was not really at issue in this trial, so that any juror bias would not affect the fairness of the trial.  The Petitioner did not dispute that he originally rented the trailer and paid the rent. His position, that he paid the rent although he let his little brother live in the trailer,  is not inconsistent with witness Jenkins' testimony. (Dkt. No. 8-1 at 134-137.) Jenkins testified that he did not know who lived in the trailer and would not be shocked if the Petitioner's brother were living there. *Id*.

Further, the trial court did inquire, and the juror said s/he could be fair and impartial. The juror knew witness Jenkins as a classmate, without specifying at what age. Jenkins testified he had been an agent with the SLED for twenty-eight years and nine years with the coroner's office. It is a reasonable assumption that the time when Jenkins and the juror were classmates was remote.

---

[10]

The Petitioner states in his reply that he has always known the name of the juror and knows that this person did sit on the jury. (Dkt. No. 20 at 12.) This information is outside of the record in this case. It is also inconsistent with his testimony at the PCR hearing. Habeas review is limited to the record that was made before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181(2011). In addition, these "new" facts do not establish that the Petitioner is not guilty of the offense charged. 28 U.S.C. § 2254(e)(2) states that a hearing not available unless the facts sought to be proved would establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would find the applicant guilty of the underlying offense.

The undersigned finds that there is no manifest error in the trial court's handling of the voir dire. The trial court ensured that a juror who knew one of the witnesses could be fair and impartial in the trial of the case, satisfying the court's obligation to provide a fair trial to the Petitioner.

Ground Six asserts ineffective assistance of counsel for "failing to properly inquire into the facts of a juror who knew State's witness Jenkins. The Petitioner has not shown that the state court's rejection of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law; nor has the Petitioner shown the state court's adjudication resulted in an unreasonable determination of the facts. The PCR court held that no prejudice resulted from counsel's performance because the juror was adequately questioned by the trial court. (Dkt. No. 8-3 at 84.) The undersigned agrees. The trial court adequately inquired into the relationship between the witness and the juror and ensured that the juror could be fair and impartial.

### Grounds Three and Five

The Petitioner asserts in Ground Three that the trial court abused its discretion by allowing the drug reports to go back to the jury when they were admitted into evidence outside the jury's presence. Ground Five asserts ineffective assistance of counsel for failing to object to same. (Dkt. 1 at 8; Dkt. No. 1-1 at 1; Dkt. No. 1-2 at 2.) The trial court allowed three drug reports to be admitted into evidence after closing arguments. The State had forgotten to move them into evidence during the testimony of the evidence technician and the forensic chemist. (Dkt. No. 8-2 at 218, 221-229.) The contents of the drug reports (identity and weight of controlled substances

found during the search) appear to have been discussed in full during the testimony of the evidence technician and the forensic chemist, with full opportunity for cross-examination. (*Id*.)

The error was discovered after closing arguments, when the State and counsel were reviewing the evidence to go back to the jury. (Dkt. No. 8-2 at 86-87.) Counsel knew that the State had not moved the exhibits into evidence during testimony, but admitted that the reports were marked, presented to him, and to the witnesses. (*Id*.) Counsel did not object when the trial court allowed the evidence to be admitted; the trial court stated that this evidence is "not what it's going to ride or fall on. We don't dispute that it weighs what it weighs. ... He didn't." (Dkt. No. 8-2 at 87.)

The PCR court held the following:

> The decision to permit the State to re-open its case and present evidence lies within the sound discretion of the trial court. State v. Humphrey, 276 S.C. 42, 43, 274 S.E.2d 918, 918 (1981); State v. Green, 350 S.C. 580, 586, 567 S.E.2d 508 (Ct. App. 2002)(citing State v. Hammond, 270 S.C. 347, 242 S.E.2d 411 (1978); State v. Harrison, 236 S.C. 246, 113, S.E.2d 783 (1960)). This Court finds no prejudice resulted from Counsel's failure to object to the admission of this evidence after the close of the State's case because the evidence included in the exhibits was already presented to the jury through the testimony of the analysts. See Hammond, 270 S.C at 355-56, 242 S.E.2d at 415. This Court finds the Applicant has failed to carry his burden of proving Counsel's performance was ineffective.

(Dkt. No. 8-3 at 84-85.)

The same principles can be found in federal law. "A district court may allow the Government to re-open its case even after the defendant makes a Rule 29 motion." *United States v. Floyd*, 153 F. App'x 236, 237-238 (4th Cir. 2005) (citing *United States v. Gray*, 405 F.3d 227, 238 n. 5 (4th Cir. 2005)). The decision to allow the Government to re-open its case is within the district court's sole discretion. *United States v. Abbas*, 74 F.3d 506, 510 (4th Cir.

1996.) The *Abbas* court outlined the factors to consider in reviewing whether or not the judge abused his discretion in ruling on a party's motion to reopen its case: "(1) whether the party moving to re-open provided a reasonable explanation for failing to present the evidence in its case-in-chief; (2) whether the evidence was relevant, admissible, or helpful to the jury; and (3) whether reopening the case would have infused the evidence with distorted importance, prejudiced the opposing party's case, or precluded the opposing party from meeting the evidence." *Id*.

The trial court did not abuse its discretion in admitting the drug reports after the close of the evidence. Counsel was not ineffective for not objecting to the admission of this evidence. First, the State admitted that it had forgotten to formally move the reports into evidence during the testimony of the evidence technician and the forensic chemist. The contents of the reports were actually discussed, so there was no new evidence before the jury. The evidence of what drugs in what weight were found during the search, was obviously relevant, admissible and helpful to the jury. The Petitioner was not precluded from challenging the evidence in the form of testimony, and the drug reports were presented to counsel at the time of the testimony. At trial, the Petitioner did not dispute the identity and weight of the drugs found during the search; his defense was that he was merely present when the drugs were found. As the trial court recognized, and the PCR court agreed, the type and amount of the drugs were not the critical issues in the case.

The PCR court concluded that the Petitioner failed to establish prejudice; such a conclusion is a reasonable one. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was

unreasonable.") The Petitioner has not shown that the trial court's admission of the drug reports was an abuse of discretion. The Petitioner has not shown that the PCR court's rejection of the claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law; nor has the Petitioner shown that the PCR court's adjudication resulted in an unreasonable determination of the facts. The Respondent recommends that summary judgment be granted as to Grounds Three and Five.

**Grounds Four, Eleven, Fourteen and Fifteen**

All of these grounds relate to the testimony of witness Reeves who testified that he and his brother-in-law bought drugs from the Petitioner at the trailer the evening before the arrest. Counsel objected to the admission of this Rule 404(b), SCRE, testimony immediately before Reeves testified (Dkt. No. 8-2 at 1-4.) The PCR court found:

> The Applicant alleges Counsel failed to fully and properly argue State v. Lyle, 125 S.C. 406, 417, 118 S.E. 803, 807-810 (1923) and Rule 404(b), SCRE as a basis for his objection to the testimony of William Reeves. This Court finds Counsel adequately challenged the admissibility of Reeves' testimony that the Applicant sold drugs in the trailer at trial. The record reflects trial counsel moved to exclude Reeves' testimony on the basis of Rule 404(b) and argued the prior bad act that Reeves would testify to was not encompassed within the charges the Applicant was on trial for. ... This Court finds Counsel's argument was properly aligned with Lyle. The rule of law is that, for prior bad acts evidence to be admissible, "[the] record must support a logical relevance between the prior bad act and the crime for which the defendant is accused." State v. Brooks, 341 S.C. 57, 62, 533 S.E.2d 325, 328 (2000) (citing State v. Adams, 322 S.C. 114, 470 S.E.2d 366 (1996)). This Court finds it is also clear from the State's response to the Applicant's motion that Reeves' testimony went to the identity exception...and the Court's ruling... that the Court properly performed an analysis pursuant to Lyle and Rule 404(b).

Dkt. No. 8-3 at 75-76.

Ground Four asserts that counsel did not even object to the "inadmissible hearsay and character evidence" of Reeves. The record does not support this contention. Counsel did in fact object to the admission of Reeves' testimony. (Dkt. No. 8-1 at 1-4.)

Grounds Eleven and Fourteen assert that counsel did not properly preserve the issue of the admissibility of Reeves' testimony. The PCR court also addressed the failure to preserve argument:

> The Applicant alleges Counsel failed to preserve the issue of the admissibility of Reeves' testimony for appeal. This Court finds that Counsel adequately preserved this issue for appellate review. To preserve an issue for review on appeal, a party must raise the issue and obtain a ruling. (Citations omitted.) .... Typically, counsel must make a contemporaneous objection in order to preserve issues for appellate review. See Sea Cove Dev., LLC v. Harbourside Community Bank, 387 S.C. 95, 108 n.5, 691 S.E.2d 158, 165 n. 5 (2010). However, where the judge makes a ruling on the admission of evidence on the record immediately prior to the introduction of the evidence in question, the aggrieved party need not renew the objection and the objection is preserved. State v. Forrester, 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001).
>
> This Court finds and the record reflects Counsel raised the issue of the admissibility of Reeves' testimony immediately prior to Reeves' testimony (Tr. Vol. N 7:4-6, 12-13). Furthermore, the trial court is not obligated to hear, nor is counsel obligated to make argument on an objection. Counsel is required to cite the basis of the objection and the Court may hear argument to aid in making its decision. See Rule 18, SCRCrimP. Counsel sufficiently preserved error by objecting to the impermissible character evidence prior to the witness' testimony. This Court further finds that the record is clear that the trial court made a contemporaneous ruling and the trial judge performed the necessary evidentiary balancing test. The record lacks any indication that the trial judge failed to perform a full and thorough analysis on this issue. Although whether Counsel renewed his objection at the directed verdict stage is unclear, the record is clear that the trial judge was aware that Reeves' testimony was objectionable at the time he denied Counsel's motion for directed verdict. (Tr. Vol. III 35:1-8). This Court finds no merit to Applicant's argument that the issue of the admissibility of Reeves' testimony was properly preserved for appellate review.

(Dkt. No. 8-3 at 77.)

These factual findings are reasonable. The record supports the PCR court's conclusion that counsel had preserved the issue of admissibility of Reeves' testimony for review. Therefore, the Petitioner has not shown counsel's performance to be ineffective or deficient.

Ground Fifteen asserts that counsel should have requested a limiting instruction for Reeves' testimony. The PCR court found:

> a limiting instruction following Reeves' testimony was unnecessary because his testimony that he went to the trailer with his brother in law to purchase cocaine from the Applicant was directly related to the crime for which the Applicant was on trial. Cf. <u>Nix</u>, 288 S.C. at 497-98, 343 S.E.2d at 630 (where prior crime was means to accomplish present crime for which accused was on trial, evidence was admissible on main issue at trial and no limiting instruction was necessary.) Based on Reeves' testimony, the State was able to obtain a search warrant of the trailer which resulted in the Applicant's arrest. This Court finds the Applicant has failed to carry his burden of proving counsel provided ineffective assistance of counsel with regard to counsel's handling of Reeves' testimony at trial. Moreover, based on the record and unique facts presented in this case, the Court cannot discern any unfair prejudice resulting from the admission of Reeves' testimony. See <u>State v. Johnson</u>, 306 S.C. 119, 125, 410 S.E.2d 547, 551 (1991) (quoting <u>State v. Alexander</u>, 303 S.C. 377, 383, 401 S.E.2d 547 (1991); Rule 403, FRCP.

Dkt. No. 8-3 at 77-78.

In *State v. Johnson*, the South Carolina Supreme Court held that evidence of another crime formed part of the *res gestae* and was directly related to the crime being tried. The court concluded that failing to give a limiting instruction was not reversible error because the other crime was directly related to the crime for which the defendant was on trial. In this case, the Respondent argues that the State sought to introduce Reeves' testimony to prove the identity of the man directing the drug operation, a crime directly related to the crimes charged to the Petitioner; therefore, a limiting instruction was not warranted. (Dkt. No. 8 at 41.) The Reeves' information also formed part of the probable cause for the search warrant. (Dkt. No. 8-3 at 121-

31

123.) In rejecting counsel's objection to Reeves' testimony, the trial court noted, " If it's within twelve hours, it's part of the deal."

The undersigned agrees that counsel was not ineffective when he did not request a limiting instruction because Reeves' testimony was directly related to the crimes for which Petitioner was on trial. The undersigned recommends granting summary judgment on Grounds Four, Eleven, Fourteen and Fifteen.

### Ground Seven

The Petitioner asserts in Ground Seven that counsel was ineffective for "failing to object to the Court's testimony, as to the Applicant's conduct at the crime scene where such testimony was never verified by any witnesses nor the evidence to the time of Arrival of the Applicant at the crime scene." (Dkt. No. 1-1 at 1-2.) The Respondent originally construed this as alleging that trial counsel was ineffective for not calling witnesses to testify that the Petitioner was merely present at the scene. (Dkt. No. 8 at 43-44.) That allegation was subject to a ruling by the PCR court, (Dkt. No. 8-3 at 79-80.), but was not included in his federal Petition. The Petitioner clarified in his reply that the Respondent was mistaken: his allegation is that counsel failed to object to the trial court's "own testimony" about the duration of Petitioner's time at the trailer, which was in response to a jury question. (Dkt. No. 20 at 14-15.)

The jury did have one question during deliberations, which the trial court addressed. (Dkt. No. 8-2 at 88-90.) The question itself was not preserved in the record, but based on the response in the record, it obviously related to how long the law enforcement witness (witness Woodward) had been conducting surveillance on the trailer. (*Id.*) The trial court told the jury that he could not answer the question, but that they could have the testimony replayed to them and

told them that they, the jury, were the fact finders. (Dkt. No. 8-2 at 89.) The trial court told the jury that the attorneys' recollection was that Woodward was "out there a long time. There's no exact period of time. He was out there most of the day." (Dkt. No. 8-2 at 88.) The foreperson stated: "So your answer to the Woodward testimony is he was there most of the day?" The trial court responded: " That's the attorneys, you know. ... Defense counsel, the prosecutrix, is satisfied with most of the day. ... Most of the day being until the SWAT team arrived, you know." (Dkt. No. 8-2 at 89-90.)

After the "answer" is given to the foreperson, counsel asks the trial court if they could "cue that up, regardless of whether they want to hear it, so we can confirm that just in case ...." The trial court responds that the court reporter can replay it for him and that "if it differs, we can write it on a piece of paper and send it back." (Dkt. No. 8-2 at 90.) The record is not clear whether counsel did confirm the answer.

This issue was raised in the Petitioner's initial PCR application, but was not pursued at the PCR hearing. The PCR court ruled that where the Applicant failed to present any evidence regarding such allegations, the PCR court found the Petitioner waived such allegations. (Dkt. No. 8-3 at 85.) Because the Petitioner abandoned this claim at the PCR hearing, it was not heard by the state court and is procedurally barred.

In the alternative, the Petitioner cannot prove deficient performance and actual prejudice. The attorneys' agreed upon answer to the question is consistent with the trial testimony of witness Woodward. The record reflects that Woodward answered the question "How long would you say you had been conducting surveillance that day, prior to the SWAT team's arrival?", was "Pretty much all day." (Dkt. No. 8-1 at 122.) The Petitioner has not proven any error of the trial

court or counsel, and he has not met his burden under *Strickland* that he was denied ineffective assistance of counsel regarding his claim that trial counsel was ineffective for not objecting to the trial court's answer to the jury question. The undersigned recommends granting summary judgment on Ground Seven.

 **Ground Eight**

In Ground Eight, the Petitioner alleges that his counsel was ineffective for failing to object to the State's use of his nickname, "Big T", in closing argument, after the trial court ruled, and the State agreed, not to use the nickname. The Petitioner misconstrues the record at trial.

The Petitioner's counsel made a motion in limine to stop the State from referencing the Petitioner's street name without laying a proper foundation. (Dkt. No. 8-1 at 41-43.) The State agreed not to use the name "Big T" until a proper foundation was laid by witness testimony. (*Id.* at 42.) The trial court ruled that the State could not use the nickname until there was proper non-hearsay testimony. (*Id.*) The nickname was not mentioned until the testimony of witness Reeves. Reeves testified that he went with his brother-in-law to the trailer to buy drugs from "Big T" and identified the Petitioner as "Big T." (Dkt. No. 8-2 at 10-11.) The State did not use the name until after this foundational testimony.

Counsel testified at the PCR hearing about this issue and the PCR court found that the State laid the proper foundation for the use of the Petitioners's nickname through Reeves' testimony; that the State's use of the nickname in closing argument was a proper comment on the facts; and that no prejudice resulted from counsel's performance. (Dkt. No. 8-3 at 83. The PCR court's conclusions are reasonable. The proper foundation for the nickname was laid. The Petitioner's counsel cannot be ineffective for failing to object to a correct ruling which was

followed by the State. The Petitioner also has not show any prejudice from the use of the nickname. The undersigned recommends granting summary judgment on Ground Eight.

## Ground Nine

In Ground Nine, the Petitioner states that counsel was ineffective for failing to know the law of the case by ensuring that all issues raised were preserved for appellate review. This allegation is conclusory, lacks specificity and fails to allege any constitutional violation or federal-law based error. Habeas relief is restricted to claims alleging an improper application of federal law. 28 U.S.C. 2254(d)(1); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws of the United States.") Ground Nine is not a cognizable claim. The undersigned recommends granting summary judgment on Ground Nine.

## Grounds Ten, Sixteen and Twenty-One

Ground Ten asserts ineffective assistance of counsel for failing to properly argue, make a proper record of, and preserve the issue of probable cause for the search warrant. Grounds Sixteen and Twenty-One contain basically the same argument.[11] As argued in his appeal, the Petitioner claims that trial counsel misunderstood the concept of standing to challenge the search warrant. The Petitioner challenges counsel's decision that, if he wanted to present the defense of

---

[11]Ground Sixteen states that the PCR court erred in finding that trial counsel's failure to challenge the search warrant was a valid trial strategy; Ground Twenty-One states that the PCR court erred in finding defense counsel had a valid strategy not to challenge the sufficiency of the search warrant. All three of these grounds were properly preserved; this was the only finding of the PCR court that was appealed. (Dkt. No. 8-7 at 3.)

mere presence at trial, then he had to accept the trial court's erroneous ruling that he could not challenge the search warrant **and** inconsistently claim at trial that the Petitioner was merely present at the trailer.

During the pre-trial motions, counsel raised with the trial court his "quandary": if he moved to suppress the search warrant, would he be precluded from arguing mere presence at trial. Counsel thought that if the State tried to show that Petitioner was in possession or control of the trailer, then he could move to challenge the warrant. Counsel thought he should be able to challenge the warrant without admitting for trial purposes that the Petitioner had possession or control of the trailer. The trial court told counsel in no uncertain terms, "you can't have it both ways." (Dkt. No. 8-1 at 37-38.) Based on the trial court's ruling, counsel decided that he would not "challenge, then, the validity of the search warrant, subject, of course, to the ruling that you made. ... I am certainly not going to jeopardize my client's position concerning our contention that he was not in control." (Dkt. No. 8-1 at 39-40.) Throughout the trial, counsel pursued the strategy that the Petitioner was merely present, in the wrong place at the wrong time, except that he was stopping by the trailer to buy some marijuana.

At the PCR hearing, counsel stated his defense strategy was to show that the Petitioner "was not a part of any of the drug conspiracy that appeared to be going on" but instead was merely present because he was "there to buy weed from his brother." (Dkt. No. 8-2 at 165.) When asked about his decision not to challenge the search warrant, counsel testified, "I felt like I was making a decision where I may be jeopardizing my entire trial strategy by challenging this — at least that's how it seemed to me." (Dkt. No. 8-2 at 169.) In formulating this strategy, counsel stated that he researched the law on the reasonable expectation of privacy. Counsel again

stated his rationale in not moving to suppress the search warrant: "I was afraid that I was getting ready to box myself in on what I thought was our absolute best defense under the circumstances, given the lack of physical evidence or other information." (Dkt. No. 8-2 at 174.) Counsel testified he did not want to negatively "affect the way the judge viewed the information," which might affect the judge's future rulings on a directed verdict. (Dkt. No. 8-2 at 176.)

> The PCR Court understood counsel's quandary:

> I'm just saying that strategically, hindsight being twenty-twenty, I think it's very easy for us to say one thing now . . . But, strategically, I don't know that it was an unreasonable posture, especially in light of the Court's comments to him that from his perspective of the law, that they were inapposite positions factually. I don't know that you can say, I was merely present, and then say, oh, by the way, I have an expectation of privacy and I have dominion and control of this residence, at least this little part that I was on.

(Dkt. No. 8-3 at 29.) The PCR court further discussed counsel's strategy, stating: "I don't know that is was an inappropriate strategic decision to decide between whether, my client was merely present or whether he had some standing, in other words, some expectation of privacy in this residence to challenge this warrant." (Dkt. No. 8-3 at 57.) The PCR court next questioned whether any prejudice resulted from not challenging the search warrant by stating, "It's not whether you would have done it, it's whether you would have prevailed and whether it would have changed the outcome of these proceedings. And I'm just not certain that there would have been any appreciable difference." (*Id.*) In the PCR court's written order, the court denied post-conviction relief on this ground. The Order of Dismissal reads, in, in pertinent part:

> The Applicant alleges counsel was ineffective for failing to challenge the probable cause for the search warrant of the trailer where the Applicant was arrested. This Court finds counsel was not ineffective for failing to challenge the probable cause for the search warrant of the trailer. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another."

Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Where counsel articulates a valid strategic reason for his action or inaction, based on an objective standard of reasonableness, counsel's performance should not be found ineffective. See Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1996); Underwood v. State, 309 S.C. 560, 425 S.E.2d 20 (1992); Stokes, 308 S.C. at 548 419 S.E.2d at 779.

     This Court finds Counsel's decision not to challenge the search warrant was based on a valid trial strategy. Counsel provided credible testimony that he originally intended to challenge the search warrant, but ultimately decided against it. He testified he was aware the Applicant did not have specific standing to suppress the search, but he wanted to challenge the search nonetheless. Counsel testified that in response to this position, he was told by the Court that he could not challenge the search warrant and then argue that the Appellant lacked control of the drugs without jeopardizing his trial strategy. This Court finds most persuasive Counsel's testimony that based on the Court's guidance he chose not to challenge the search warrant. Further, it is clear from the trial court transcript and the colloquy what Counsel would have argued; therefore, no proffer was necessary. (Tr. Vol. I 34:8-37:13). This Court finds counsel's trial strategy was valid and it was reasonable and wise for counsel to seek the court's guidance in deciding whether to challenge the warrant based on the Court's opinion.

     Additionally, the Applicant argues that Counsel was ineffective for failing to request a Delaware v. Franks hearing to challenge the search warrant. Although Counsel could have challenged the validity of the search warrant and attacked the validity of Reeves' attestation by impeachment, Counsel did successfully impeach Reeves on the stand. This Court finds that from the record it appears the search warrant was valid and that Counsel's decision not to request a formal Delaware v. Franks hearing was a valid strategic decision. This Court can discern no basis for a successful challenge, even if made, and that the failure to request a formal hearing in no way prejudiced the Applicant.

     This Court also finds the Applicant has failed to carry his burden of proving prejudice resulted from Counsel's failure to challenge the search warrant. Counsel provided credible testimony that it was unlikely any challenge to the search warrant would have been successful. This Court finds that counsel provided reasonable performance with regard to his decision not to challenge the search warrant and his performance did not prejudice the Applicant.

(Dkt. No. 8-3 at 81.)

    "[S]trategic choices made after thorough investigation of law and facts relevant

to plausible options are virtually unchallengeable ...." *Strickland*, 466 U.S. at 690; *see*

*also Meyer v. Branker*, 506 F.3d 358, 374 (4th Cir. 2007) ("Holding that such a reasoned

determination constituted objectively unreasonable performance would be worse than

folly: it would essentially require capital defense counsel to present evidence of remorse, even if, in their considered judgment, the evidence would affirmatively hurt their defendant's case. *Strickland* does not require any such outcome."). The record supports that counsel was pursuing what he thought was his strongest strategy, to establish that the Petitioner was merely present at the trailer. After the trial court's comments when counsel tried to move to challenge the search warrant, counsel's judgment, having reviewed the law and the facts, was to choose not to challenge the warrant so that he could pursue his strongest defense. The PCR court's conclusions that counsel's choice was a valid trial strategy and did not constitute deficient performance are reasonable applications of federal law, and are a reasonable determination of the facts.

The PCR court's ruling that there was no prejudice from the failure to challenge the search warrant is also a reasonable application of federal law and determination of the facts. Reeves' inconsistent statements were highlighted on cross-examination and were described by counsel in his colloquy with the trial court. One of the bases for the search warrant was that Reeves and his brother-in-law went to the trailer to buy drugs from the Petitioner. That one contention stayed consistent throughout the cross-examination of Reeves. The PCR court noted at the hearing that law enforcement did supplement Reeves' statement with their own investigation to provide "some rational basis and some veracity to who [they are] dealing with." (Dkt. No. 8-2 at 181.) The Petitioner has not met his burden to show that there is a reasonable probability that, but for the failure to challenge the warrant, the result of the trial would have been different.

The undersigned recommends granting summary judgment on Grounds Ten, Sixteen and Twenty-One.

**Grounds Twelve and Thirteen**

The Petitioner asserts in Ground Twelve that counsel was ineffective for failing to properly argue, make a proper record of, and preserve the issue of admissibility of the Petitioner's prior record for impeachment purposes. He asserts in Ground Thirteen that counsel failed to fully discuss the benefits and pitfalls of testifying because counsel did not get a definitive ruling on the admissibility of his prior record.

Counsel raised the admissibility of the Petitioner's prior record with the trial court before testimony began: "[M]y client may or may not choose to testify and at the appropriate time when the Court inquires of his rights, ... there may be an issue as to whether or not his prior convictions [are admissible].... But I'll reserve that motion at the appropriate time because we may not even address that." (Dkt. No. 8-1 at 44.) After the presentation of the State's case, the issue was raised again. The trial court asked the Petitioner and counsel if they had discussed the Petitioner's right to testify and whether the Petitioner was going to testify or not. (Dkt. No. 8-1 at 30.) Counsel responded that the Petitioner was not going to testify. The trial court told the Petitioner that he could change his mind at any time; the Petitioner answered that he was aware of that. (*Id.*)

Counsel testified about these interrelated issues at the PCR hearing. He stated that there was no definitive ruling on the admissibility of the prior convictions. Counsel believed it was premature, as the Petitioner had not decided whether to testify or not. Counsel testified that he told the Petitioner that he did not think his prior drug convictions would be admissible. Counsel

does not believe the prior convictions were the reason the Petitioner decided not to testify. (Dkt. No. 8-2 at 199-202.) Counsel stated that he and the Petitioner discussed his right to testify and counsel would have requested a ruling on the prior convictions had the Petitioner decided to testify. (Dkt. No. 8-2 at 199-201.) Counsel testified that he advised the Petitioner of his right to testify and that the ultimate decision not to testify was the Petitioner's. (Dkt. No. 8-2 at 224-225.) "If the reason that [Petitioner] wasn't testifying was based on his prior record, then I would think [a hearing] would have been necessary." (*Id.*)

The PCR court denied relief on these grounds:

> The Applicant alleges counsel was ineffective for failing to obtain a ruling on the admissibility of the Applicant's prior record for impeachment purposes, had the Applicant chosen to testify at trial. This Court finds Counsel had no obligation to request a ruling on the admissibility of the Applicant's criminal record before the Applicant decided whether or not he would testify. This Court finds it unlikely the admissibility of the Applicant's prior record greatly impacted the Applicant's decision not to take the stand, since Counsel provided credible testimony that he advised the Applicant that it was unlikely his prior drug convictions would be admissible for impeachment purposes. This Court also finds Counsel provided credible testimony that he discussed with the Applicant his right to testify prior to trial. This Court finds and the record reflects the Applicant was also advised by the trial court of his right to testify. (Tr. Vol. IE 35:1 1-20). Moreover, the trial court was not obligated to rule on the admissibility of the Applicant's prior record at the beginning of trial expending time on what may well have been a moot issue. This Court finds the Applicant was adequately informed of his right to testify and his decision not to testify was freely and voluntarily
> made. This Court finds the Applicant has failed to carry his burden of proving Counsel was ineffective.

(Dkt. No. 8-3 at 78-79.)

The undersigned agrees with the State: the Petitioner is not entitled to relief on these grounds because the PCR court reasonably applied federal law. The PCR court's ruling was based in large part on the court's determination of the credibility of counsel; the credibility of counsel is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("But for a

41

federal habeas court to overturn a state court's credibility judgments, the state court's error must

be stark and clear."); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d)

gives federal habeas courts no license to re-determine credibility of witnesses whose demeanor

has been observed by the state trial court, but not by them.")

The PCR court also reasonably applied the facts. The record, discussed above, provides a

clear and reasonable basis for the conclusion that the Petitioner knowingly waived his

constitutional right to testify. The undersigned recommends granting summary judgment on

Grounds Twelve and Thirteen.

**<u>Ground Seventeen</u>**

The Petitioner alleges in Ground Seventeen that his counsel was ineffective for failing to

request the recusal of the trial judge, Ernest Kinard. This issue was explored at the PCR hearing.

Counsel was asked if he thought it was a problem that "Judge Kinard may know something

about the cases by taking codefendants' pleas and then trying [the Petitioner's] case? Did that

seem to be an issue that he had already formulated an opinion or knew something about it he

shouldn't have known?"  Counsel responded that he did not think that was an issue at all. (Dkt.

No. 8-2 at 208-209. 226-227.)

The PCR court cited *State v. Jackson*, 353 S.C. 625, 627, 578 S.E.2d 744, 745 (Ct. App.

2003), for the following:

> Pursuant to Canon 3(E)(1)(a) of Rule 501, SCACR, a judge should disqualify himself
> or herself in a proceeding in which the judge's impartiality must reasonably be
> questioned. It is not enough for a party seeking disqualification to simply allege bias
> or prejudice. The party must show some evidence of that bias or prejudice. The
> alleged bias or prejudice must stem from an extra-judicial source and result in a
> decision based on information other than what the judge learned from his or her
> participation in the case as a judge. ...

> This Court finds the Applicant has failed to show any evidence of actual bias or prejudice on the basis of which counsel should have moved for Judge Kinard's recusal. This Court finds the Applicant has failed to carry his burden of proving counsel was ineffective and this allegation is wholly without merit.

(Dkt. No. 8-3 at 82-83.)

The Supreme Court has stated that the fundamental tenet of its constitutional recusal cases is that there is a heavy "presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). "The nature of the criminal justice system often requires judges to consider evidence and then dismiss it from their minds." *Esparza v. Mitchell*, 310 F.3d 414, 424-425 (6th Cir. 2002), citing *Withrow*, 421 U.S. a 39. The trial judge is not recused simply because he heard information about the case during the pleas of co-defendants. The Petitioner has the burden of providing some evidence of bias or prejudice, which he has not done. Without **any** evidence in the record that the trial judge had any actual bias or prejudice, or even remembered any facts from the pleas of the co-defendants, the PCR court, and the undersigned, presume the trial judge was capable of providing the Petitioner a fair trial and dismissing any information about the Petitioner he may have learned from his mind.

Additionally, even if we speculate and presume the trial judge did remember evidence about the case from the pleas of co-defendants, this would not be an extra-judicial source; it would be knowledge the trial court learned through his participation in the case as a judge. Counsel cannot be ineffective for failing to bring a meritless motion. The undersigned recommends granting summary judgment on Ground Seventeen.

**Grounds Eighteen, Nineteen and Twenty**

The Petitioner asserts in Ground Eighteen that the PCR court failed to address all issues raised by the Petitioner in his original PCR application. Ground Nineteen is that the PCR court

erred in failing to address the cumulative effect of the above errors committed by trial counsel. Ground Twenty is that the PCR court erred in finding that counsel's performance was not deficient and that counsel's performance did not result in unfair prejudice to the Petitioner.

These grounds lack specificity and are conclusory in nature. The undersigned agrees with the PCR court that counsel's performance was not ineffective and did not result in any prejudice to the Petitioner, therefore, there are no errors to consider cumulatively. The undersigned recommends granting summary judgment on Grounds Eighteen, Nineteen and Twenty.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Respondent's Motion for Summary Judgment (Dkt. No. 9) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[12]

IT IS SO RECOMMENDED.

January 31, 2017

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[12]Title 28, Section 2253 provides in relevant part,

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).